[No. 13192. Department One. March 2, 1916.]

ALICE B. JOHNSON, as Executrix etc., Respondent, v.
F. L. CARR, Appellant.[1]

INDEMNITY—CONTRACT—CONSTRUCTION. Where the purchaser of stock in a corporation gave his note for the price at par, and later made an arrangement whereby the payee agreed to take back the stock and satisfy the note when the stock was sold, evidenced by a receipt of the shares of stock "for sale at par," and agreeing to pay the maker any interest he might pay on the note, and reciting "Maturity note sale stock," the agreement was one in effect guaranteeing to pay both principal and interest of the note upon sale of the stock; and upon such sale, the payee was liable for the payment of the note to an indorsee for value, and for cancellation of the note.

JUDGMENT—RES JUDICATA—MATTERS CONCLUDED—IDENTITY OF PARTIES AND ISSUES. Where defendant, the payee of a note, taken in payment for corporate stock, agreed to take the stock back, and guaranteed, upon sale of the stock, to pay the note, which he had indorsed for value, and thereafter, the indorsee of the note recovered judgment thereon against plaintiff, the maker's executrix, in an action in which defendant was not a party, the judgment therein is not res judicata or a bar to plaintiff's action against defendant on his guarantee of the note, although the plaintiff (defendant in the former action) sought therein to make the payee a party thereto and set up the whole transaction, charging fraud in the indorsement

[1]Reported in 155 Pac. 778.

of the note, where the court in the former action made no finding on the question of fraud and refused to make defendant a party thereto, but simply found that the plaintiff in the former action was an indorsee for value and the owner and holder of the note; since the issue as to defendant's guarantee was not proper to be tried in a cause wherein defendant was not a party, and the same was not adjudicated in the former action on the note.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered April 27, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Morgan & Brewer* and *Gordon & Easterday,* for appellant.

*O. M. Nelson,* for respondent.

MOUNT, J.—This action was brought to recover against the defendant the amount of a note which the plaintiff was required to pay to the Montesano National Bank. The case was tried to the court and a jury, and resulted in a judgment in favor of the plaintiff. The defendant has appealed.

The complaint alleges:

"That on or about the 1st day of July, 1911, J. J. Johnson, deceased, purchased from F. L. Carr, the defendant herein, twenty-five shares of stock of the Montesano General Hospital, a corporation duly organized and existing under and by virtue of the laws of the state of Washington; that the said J. J. Johnson gave his note in payment for such shares in the sum of $2,500 to the said Carr; that thereafter on January 4, 1912, the said J. J. Johnson, deceased, renewed said note by giving the said defendant Carr a new note therefor in the sum of $2,500; that the said F. L. Carr negotiated the said note with the Montesano National Bank.

"That on or about the 9th day of January, 1912, the said J. J. Johnson, deceased, made an arrangement with the said defendant, F. L. Carr, that the said F. L. Carr should take said stock of the Montesano General Hospital at par, and satisfy the said note whenever the said stock was sold by the said F. L. Carr; that the said transaction is evidenced by the following receipt in words and figures as follows:

January 9, 1912.
Received of J. J. Johnson for sale twenty-five hundred stock in Montesano Gen. Hospital at par & I agree to pay him any interest he may pay on note for twenty-five hundred dollars.    Date of Jan. 9, 1912, at 8 per cent.    Maturity note sale stock.                    F. L. Carr.

"That thereafter, on or about the 14th day of January, 1913, the said F. L. Carr notified the plaintiff herein that he had sold said stock, and claiming that he had cancelled a note dated January 9, 1912, given by said J. J. Johnson for such stock.

"That no note was ever given by the said J. J. Johnson, deceased, to the said F. L. Carr dated January 9, 1912; that in truth and in fact the only note given the said F. L. Carr by the said J. J. Johnson, deceased, was the renewal note dated January 4, 1912; that the said F. L. Carr on said January 9, 1912, agreed to hold the said J. J. Johnson, deceased, harmless as to said note of January 4, 1912."

The complaint then alleges that the Montesano National Bank thereafter brought an action upon the said note and obtained a judgment against the plaintiff for the sum of $2,500 principal, $295.55 interest, $15.80 costs, and an attorney's fee of $200; and that the plaintiff was required to, and did, pay said judgment. The prayer is for the amount of the note, with interest, costs, and attorney's fees.

The defendant demurred to this complaint on the ground that it did not state facts sufficient. This demurrer was overruled, and an answer was filed which admitted the purchase of the stock by J. J. Johnson from Carr, and denied that the note was renewed on January 4, but alleges that the same was renewed on January 9; and admitted the obtaining of the judgment by the Montesano National Bank. After pleading further affirmative defenses not necessary to be noticed, the defendant for further answer alleged that the matters and things set up in the plaintiff's complaint were adjudicated in the action of the Montesano National Bank against the plaintiff, and that the issues now sought to be raised were adjudicated in that action.

The appellant makes two principal contentions upon this appeal. The first is that the court erred in overruling the demurrer to the complaint. It is argued upon this contention that the complaint itself shows that there was no agreement by Dr. Carr to save the plaintiff harmless against the note named. It is argued that the receipt copied in the complaint is an agreement only to pay the interest upon the note. But it is apparent, it seems to us, from the allegations of the complaint, that this receipt is more than an agreement on the part of Dr. Carr to pay interest. It is alleged that he took this stock of the hospital to be sold by him at par "and satisfy the said note whenever the stock was sold." He had in his possession at that time the note signed by Mr. Johnson for $2,500, the purchase price of the stock. Having the stock and note in his possession, the note being payable to Dr. Carr, he agreed to pay the interest which Mr. Johnson might be required to pay on the note. It was not necessary that he should agree to pay the note to Mr. Johnson, because the note was not payable to Johnson; it was payable to Carr. Upon the sale of the stock, Carr was to cancel the note. His indorsement of the note when it was transferred to the bank was an agreement as between himself and the bank to pay the note. The maturity of the note, according to the receipt, was the sale of the stock. When the stock was sold by him at par, the note, so far as Dr. Carr was concerned, was paid. It was his obligation, then, to pay the note, both principal and interest, held by the bank. The effect of this receipt was to guarantee both principal and interest, because if the stock was sold as alleged, Dr. Carr had the money he received from the bank, and also $2,500 from the sale of the stock. He therefore was liable for the payment of the note to the bank, and for a cancellation of the note. We think the complaint was sufficient.

It is next contended that the action brought by the bank upon the note was *res judicata* of the right of the plaintiff to recover against Dr. Carr. It seems that, at the time this

note was given by the deceased to Dr. Carr, or shortly there-
after, Dr. Carr indorsed the note to the bank and received
value therefor.    Thereafter the bank brought an action
against the estate of Mr. Johnson without making Dr. Carr
a party.   The executrix attempted to defend that action upon
the ground that the note was fraudulently transferred by
Dr. Carr to the bank without any consideration; and the
whole transaction between Mr. Johnson and Dr. Carr was set
up in the answer to that action.   The answer prayed to have
Dr. Carr made a party.   He was not made a party to that
action; but evidence was introduced apparently to the effect
alleged in the complaint in this action.   The court made no
finding, however, upon the question of fraud, but found in
that action as follows:

"That on or about the 4th day of January, 1912, the de-
cedent, J. J. Johnson, made, executed, and delivered to F. L.
Carr, his certain promissory note, payable on demand, in the
sum of $2,500, with interest at 8% per annum.   That at the
same time and as a part of the same transaction, the said
F. L. Carr endorsed said note to the plaintiff, Montesano Na-
tional Bank, for value.   That the plaintiff is now the lawful
owner and holder thereof."

So it is apparent that the only issue necessarily decided by
the court in that action was whether the bank obtained the
note from Dr. Carr for value; and so finding, the trial court
entered judgment against the estate of Mr. Johnson for the
face of the note, with interest, costs, and attorney's fees.   We
are satisfied that this was not an adjudication of the fact
that Dr. Carr was not required to cancel the note as against
the deceased, or his estate.   It seems plain that such issue
was not proper to be tried in that case, for Dr. Carr was not
made a party, and the question was not adjudicated as be-
tween Dr. Carr and the plaintiff in this case.   The only
question submitted to the jury upon the trial of this case
was stated by the court in an instruction as follows:

"In this case the plaintiff claims, in substance and effect,
that the certain note which was sued upon in the former ac-

tion in this court was a note which Dr. Carr had agreed to protect Johnson against; in other words, it was a Carr note and not a note of the bank, as I understand the case; and the burden of proof is upon the plaintiff to establish her cause by a preponderance of the evidence. If you find from the evidence that Dr. Carr, the defendant in this action, agreed to protect Johnson against this note, and failed to do so, then you should find for the plaintiff; unless you find from a preponderance of the evidence that he did so agree, then you should find for the defendant."

This presented simply two questions for the jury: First, was the note in this action the same note which was sued upon by the bank; and second, did Dr. Carr agree to protect Johnson against this note. Those were the controlling issues in this case. We are satisfied from the evidence that the finding of the jury was amply sustained upon both questions; that the note was the same, and that Dr. Carr did agree to protect Mr. Johnson against not only the interest, but the face of the note, in case the stock was sold as he had agreed to sell it. The evidence clearly shows that Dr. Carr wrote a letter to the plaintiff stating that he had sold the stock and canceled the note. This cancellation was made, not by returning the note, but was canceled by clippng off the signature of Mr. Johnson from some paper, and returning the signature alone to the plaintiff. This circumstance, in our opinion, is sufficient to taint the transaction as an endeavor to show that the note sued upon by the bank was a note other than the one given by Mr. Johnson to Dr. Carr for the purchase price of the hospital stock.

We are satisfied, therefore, that the complaint states a cause of action; that the adjudication upon the note sued upon by the bank was not an adjudication of the rights of the plaintiff and Dr. Carr in this action; and that the evidence is sufficient to sustain the judgment.

The judgment is therefore affirmed.

Morris, C. J., Ellis, and Fullerton, JJ., concur.